LOUIS FARKAS et al., Petitioners, v NORMAN S. MOORE et al., as Members of the Public Health Council of the State of New York, Respondents.

First Department, April 17, 1975

*Robert Z. Dobrish* of counsel (*Jack S. Hoffinger* and *Robert A. Goldschlag* with him on the brief; *Hoffinger, Friedland & Roth,* attorneys), for petitioners.

*Robert S. Hammer* of counsel (*Irving Galt* with him on the brief; *Louis J. Lefkowitz, Attorney-General*), for respondents.

LANE, J. Petitioners, Farkas and Stern, had filed an application for establishment and construction of a health-related facility. The facility to be built was to be owned by the FSL Realty Corporation (FSL) and leased to the Farkas and Stern partnership (Partnership). Farkas represented at the hearing that FSL had a stockholders' agreement which called for a 50% contribution by Farkas and a 50% contribution by Stern. Stern concededly had no capital to contribute. Farkas was to make the major capital contribution and Stern was to make repayments to Farkas from his share of the rents received by the Partnership.

The cost of building the facility was established at $4,200,000, with a projected mortgage of $3,500,000. It was further noted that an additional $92,000 was required for initial operating costs. In sum, therefore, Farkas and Stern would be required to produce a total of $792,000 ($700,000 for construction costs and $92,000 operating costs) to open the new facility.

Farkas claims that he had $67,287 in ready cash; however, the additional funding credited to him by the referee was somewhat contingent, if not totally illusory. Two examples will suffice.

A letter from the Security National Bank indicated that Farkas had been previously granted "accommodations * * * on an unsecured basis up to a high of low six figures." The letter then stated: "Based upon our satisfactory relationship over many years, we would be happy to *consider* the principals *[sic]* normal credit requirements" (emphasis added). The letter contained no commitment to a dollar amount, but Farkas projected the amount to be any figure between $150,000 to $250,000. The hearing officer magnanimously valued this ambiguous "letter of credit" at $250,000. Another asset considered at "full value" by the hearing officer was an interest in a realty corporation, the sole asset of which was a

building condemned by the City of New York. The corporation had already received approximately $80,000 for the property. A suit is pending in which that realty corporation claims a right to an additional $100,000. If the suit is concluded favorably to the corporation and a $100,000 award is entered, Farkas' share would be about $37,600. Again, in a burst of magnanimity, the hearing officer credited the full $37,600.

These two examples are but illustrative of the flaccid state of Farkas' financial affairs.

Nonetheless, even after allowing the benefit of this contingent income, it was clear to the hearing officer that if Farkas were to be the mainstay of FSL's contribution to the new health facility, he would have to "apply substantially all of his net worth to finance the applicant Stern." It would have been more appropriate for the hearing officer to deduct the full $287,600 when considering the total net worth available for this new investment. Had he done that, Farkas' assets would be close to $200,000 below the amount needed to finance this new venture.

While it is true that one may look to the Partnership as a whole to determine its assets, it is clear that the Partnership and FSL would be committed to the hilt in order to finance the operation. Debt service on the mortgage was not considered when it was stated that Stern would repay FSL from the rental income on the new facility.

Subdivision 3 of section 2801-a of the Public Health Law mandates that an application be approved only after three criteria are met; namely, that a public need for the institution exists; that the character, competence and standing of the applicants are satisfactory; and that the financial resources and its sources of future revenues are satisfactory.

There was substantial evidence presented to indicate inadequate financing in the case at bar. Even giving Farkas the benefit of every figure submitted by him, the hearing officer concluded that financing was inadequate. His conclusion must be sustained, a fortiori, when it appears, as illustrated above, that the figures allowed were contingent at best and mere optimistic expectancies at worst.

This court should not place its imprimatur upon an application of this sort, based as it is on overly optimistic projections rather than substantial commitments.

Accordingly, the resolution of the Public Health Council

disapproving petitioners' application should be confirmed, without costs and without disbursements.

Nunez, J. (dissenting). In my view petitioners' application to construct and operate a 208-bed health-related facility in the Bronx should have been granted. The application was denied on the basis that petitioners lacked the necessary financial resources needed for the project (Public Health Law, § 2801-a, subd 3, par [c]). The application was filed by three partners, Louis and Rose Farkas and Herman Stern. It was approved by the Regional Council and by the State Hospital Review and Planning Council. It was disapproved, following a plenary hearing, by respondent Public Health Council, upon its hearing officer's report that petitioners did not have sufficient funds to build the facility.

The hearing officer found that petitioners would be required to supply equity capital of $792,000; that Louis and Rose Farkas had a net worth of $879,892. Notwithstanding such findings, showing that Farkas' assets alone were more than sufficient to meet the cash requirements of the project, the hearing officer recommended disapproval of the application stating that Stern had not demonstrated his net worth and that Farkas would have to supply nearly all of his net worth in order to finance Stern. I see nothing wrong in such arrangement. Farkas testified that he and his wife would contribute the necessary capital and that Stern would contribute his expertise and know-how. Neither the statute, nor the regulations, require equal shares of capital from each partner. It requires only a showing of the "financial resources of the proposed institution" (Public Health Law, § 2801-a, subd. 3) in this case, the Partnership. The application was recommended for approval by the first two of the three agencies required to pass thereon. These two agencies recommended approval on their findings that (1) there is a public need for the facility, (2) the good character, competence and standing of the applicants and (3) the adequate financial resources and the source of future revenues for the institution (Public Health Law, § 2801-a, subd. 3). There is no reasonable basis for the hearing officer's disapproval recommendation. It not only goes counter to the approval of the two mentioned prestigious agencies, his disapproval flies directly in the face of his own findings. I would annul the determination appealed from and grant the petition.

KUPFERMAN, J. (concurring in dissent). The majority has analyzed and raised questions with respect to adequate financing by the petitioners, although the hearing examiner's figures show a sufficient total. In fact, on this appeal, with respect to amount the only real question is whether the petitioners must provide a total of $792,000, which the hearing examiner found, or the lesser amount of $452,000, as contended by the petitioners, because a builder's profit would be involved, and one of the petitioners was the builder.

If one accepts the hearing examiner's financial findings, which I do, then the only question on this appeal is the correctness of the determination that each partner would have to supply his own share, and I find no foundation in the Public Health Law for such a requirement. There is no reason given why one partner cannot contribute the money and the other the expertise.

Accordingly, I join in the dissent.

LUPIANO and LYNCH, JJ., concur with LANE, J.; NUNEZ, J., dissents in an opinion; KUPFERMAN, J., concurs, in a separate opinion, with dissent of NUNEZ, J.

Resolution of respondent Public Health Council of the State of New York confirmed, without costs and without disbursements and the petition dismissed.